**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

--------------------------------------------------------------X

STEVEN E. LIPSON, AN INDIVIDUAL
2197 NORTHWEST 59TH STREET
BOCA RATON, FLORIDA 33496

                                           *Plaintiff,*            No.: _____

                    -against-                       **COMPLAINT
FOR DAMAGES AND
INJUNCTIVE RELIEF**

ROSS B. CLAXTON, INDIVIDUALLY AND
D/B/A NETDATA SOLUTIONS
36 SOUTHGATE COURT, SUITE 201                 WITH
HARRISONBURG, VIRGINIA  22801;

                                                **JURY DEMAND**

NET VISTA, INC., A NEVADA CORPORATION
711 S. CARSON STREET, SUITE 4
CARSON CITY, NEVADA 89701;

EMP MEDIA, INC., A NEVADA CORPORATION
2300 WEST SAHARA AVE, STE. 680 BOX 23
LAS VEGAS, NEVADA 89102;

NEIL INFANTE, AN INDIVIDUAL
2700 LAS VEGAS BLVD
LAS VEGAS, NEVADA 89109;

BURAK BASKAN, AN INDIVIDUAL
2595 FREMONT STREET
LAS VEGAS, NEVADA 89104;

SHAD APPLEGATE, AN INDIVIDUAL
6130 FLAMINGO ROAD
LAS VEGAS, NEVADA 89103;

AND

JOHN DOES 1-5,

                                         *Defendants.*
--------------------------------------------------------------X

**COMPLAINT**

COMES NOW Steven E. Lipson ("Plaintiff"), by and through counsel, and brings the following action against Ross B. Claxton ("Claxton"), NetData Solutions, Net Vista, Inc., a Nevada corporation ("Net Vista"), EMP Media, Inc., a Nevada corporation ("EMP"), Neil Infante ("Infante"), Burak Baskan ("Baskan"), Shad Applegate ("Applegate"), and John Does 1-5 ("Doe Defendants") (collectively, "Defendants"), and alleges as follows:

**INTRODUCTION**

1.      This is an action to recover the damage caused by, and to prevent further damage arising from, Defendants' misappropriation and conversion of Plaintiff's business, as well as Defendants' acts of negligence, conspiracy, fraud, tortious interference, violations of the Electronic Communications Privacy Act, violations of the Computer Fraud and Abuse act, violations of the Anti-Cybersquatting Consumer Protection Act, trademark infringement, passing off, reverse passing off, misappropriation of trade secrets, and unjust enrichment.

2.      Each of the Defendants joined together with the joint purpose and material intent, and acted for and as actual and apparent agents of each other, and conspired together for the common cause and purpose of committing the acts described herein that substantially injured Plaintiff.

3.      Defendants' conduct has caused and continues to cause irreparable damage to Plaintiff.

4.      This action arises under the trademark laws of the United States, Sections 32, 43(a) and 43(c) of the Lanham Act, 15 U.S.C. § 1125(a) and (c), 18 U.S.C. § 1030 *et*

*seq*., Va. Code Ann. § 59.1-336 *et seq*., as well as the common law of the Commonwealth of Virginia and every other state in which Defendants do business.

## THE PARTIES

5.      Plaintiff is an individual residing in Palm Beach County, Florida.

6.      Defendant Ross B. Claxton ("Claxton") is an individual residing in Rockingham County, Virginia, and doing business as NetData Solutions in Rockingham County, Virginia.

7.      Defendant Net Vista, Inc. ("Net Vista") is a Nevada corporation having its principal place of business at 36 Southgate Court, Suite 201, Harrisonburg, Virginia, 22801.  Defendant Claxton is the Registered Agent, Director, Treasurer, Secretary, and President of Net Vista.

8.      Defendant EMP Media, Inc. ("EMP") is a Nevada corporation having its principal place of business at 2300 West Sahara Avenue, Suite 680, Box 23, Las Vegas, Nevada, 89102.

9.      Defendant Neil Infante ("Infante") is an individual residing in Clark County, Nevada.  Infante is the Director and Secretary of EMP.

10.      Defendant Burak Baskan ("Baskan") is an individual residing in Clark County, Nevada.  Baskan is the President of EMP.

11.      Defendant Shad Applegate ("Applegate") is an individual residing in Clark County, Nevada.  Applegate is the Treasurer of EMP.

12.      Defendants John Does 1 through 5 are individuals, corporations, or other legal entities whose names and addresses of residence are currently unknown and unascertainable by Plaintiff, who have engaged in various illegal, unlawful, unauthorized

and wrongful actions against Plaintiff, and Plaintiff therefore sues said Defendants by such fictitious names.  Plaintiff will amend this lawsuit to identify the Doe Defendants by proper legal names upon obtaining such information.

13.    Each of the Defendants joined together with the joint purpose and material intent, and acted for and as actual and apparent agents of each other, and conspired together for the common cause and purpose of committing the acts described herein that substantially injured Plaintiff.

## JURISDICTION AND VENUE

14.    This Court has original jurisdiction over the claims in this matter pursuant to 28 U.S.C. §§ 1331 and 1332.

15.    Defendant Claxton is subject to the jurisdiction of this Court by virtue of his residence in Virginia.

16.    Defendant Net Vista is subject to the jurisdiction of this Court by virtue of having its principal place of business in Harrisonburg, Virginia.

17.    Defendants EMP, Infante, Baskan, Applegate, and John Does 1-5 are subject to the jurisdiction of this Court pursuant to Va. Code § 8.01-328.1 by, at least, transacting business in this Commonwealth, contracting to supply services or things in this Commonwealth, and causing tortious injury by an act or omission within this Commonwealth.  As a result of these Defendants' minimum contacts with this Commonwealth, and their derivation of income from business transactions in this Commonwealth, they have availed themselves of the privileges and immunities of this Commonwealth such that this Court's jurisdiction over them is consistent with the due process clause of the U.S. Constitution.  Jurisdiction over these Defendants is also proper

because they, each of them, conspired with a Virginia resident to injure Plaintiff, knowing that acts in furtherance of that conspiracy would be, and were, committed in this Commonwealth.

18.     Venue is proper in Rockingham County pursuant to Va. Code § 8.01-262(1) (3) and (4).  Venue is further proper because Defendants engaged in a conspiracy of which at least one member resides in Rockingham County, Virginia.

## STATEMENT OF FACTS & GENERAL ALLEGATIONS

19.     Plaintiff is, and at all relevant times has been, the owner of the domain name  <bigdoggie.net>, along with the associated website, including but not limited to all of the intellectual property, revenue, and goodwill associated with the domain name and website (collectively, the "Website").

20.     At the time Plaintiff first became involved in the ownership of the Website in 2001, the Website was set up solely as a message board.

21.     At the time Plaintiff first became involved in the ownership of the Website in 2001, Defendant Claxton was a "user" and "message board operator" of the Website.

22.     After becoming an owner of the Website in 2001, Plaintiff invested substantial time, effort, and money to convert the Website from a banner advertising-based message board, to a membership subscription-based site.

23.     Plaintiff launched the membership subscription-based platform of the Website in the summer of 2001.

24.     After Plaintiff converted the Website to a membership subscription-based site, the Website's revenues and profits, and thus its value, greatly increased.

25.     In 2002, Plaintiff entered into an agreement with Defendant Claxton to manage the Website, in which Plaintiff paid Claxton five thousand dollars ($5,000) per month for his management services.

26.     Plaintiff apportioned Claxton's management fee to represent approximately fifteen percent (15%) of the Website's monthly net credit card revenues.

27.     In 2003, as the Website's monthly net credit card revenues increased, Claxton's compensation was increased to ten thousand dollars ($10,000) per month, and Claxton was given a percentage of the banner advertising revenue generated from the Website.

28.     Also in 2003, Claxton's management duties were expanded to where Claxton was responsible to set up an official corporation to act as the Website's manager and public-facing contact.

29.     Claxton registered and administered the Website, pursuant to his management duties, under names of entities that Claxton set up for that particular purpose, such as Net Vista, Inc., a Nevada corporation, and Netvestors Limited, a Turks and Caicos business entity.

30.     Claxton continued to be a highly trusted agent of Plaintiff for approximately ten years.

31.     Over the years, the Website's monthly net credit card revenues declined, as did Claxton's corresponding earnings.

32.     Recently, Claxton's earnings had dropped to approximately three thousand dollars ($3,000) per month, based on the corresponding decline in the Website's monthly net credit card revenues.

33.     The decline in the Website's monthly net credit card revenues is a result of the lack of effort put into promoting the Website.

34.     Claxton was in charge of promoting the Website.

35.     Plaintiff used the third-party services of Plug & Pay Technologies, Inc. (Plug'nPay), a credit card processor, to process all credit card membership subscriptions to the Website, which Plug'nPay directly deposited into Plaintiff's bank account.

36.     Plaintiff gave Claxton access to the Plug'nPay account so that Claxton could administrate customer chargebacks and credits.

37.     Although Claxton had administrative access to Plaintiff's Plug'nPay account for the purpose of processing customer chargebacks and credits, at no time did Plaintiff allow Claxton access to any of Plaintiff's bank accounts or disclose to him the total amount of monthly net credit card revenue generated by the Website.

38.     At no time did Plaintiff ever sell, convey, transfer, or otherwise authorize or give ownership of the Website to Claxton, or any of the other Defendants.

39.     In January 2012, Plaintiff noticed a substantial decline in the amount of credit card revenue deposited into his bank account from Plug'nPay.

40.     After noticing the substantial decrease in credit card revenue deposits to his bank account from Plug'nPay, Plaintiff attempted to log into the Website to investigate; however; Plaintiff was not able to log into the Website.

41.     Because of a lag between the date a credit card is charged and the date on which that charge gets deposited into Plaintiff's bank account by Plug'nPay, Plaintiff continued to receive credit card revenue deposits into his bank account from Plug'nPay, albeit less and less every day, for approximately two weeks after the date on which

Plaintiff realized that his login information had been altered so that he no longer had access to the Website's administration.

42.    After this approximate two week period of dwindling credit card revenue deposits from Plug'nPay, all revenue from the Website ceased being deposited into Plaintiff's bank account.

43.    Defendant Claxton used confidential and trade secret information he gained while employed by Plaintiff to change the administrative login information to the Website.

44.    Defendant Claxton used confidential and trade secret information he gained while employed by Plaintiff to intercept and redirect the payment processing for the Website.

45.    As a result, Plaintiff no longer has access to the Website, including but not limited to Plaintiff's trade secrets, intellectual property, and the Website's revenues.

46.    Although Plaintiff no longer has control over or access to the Website, the bank account Plaintiff used to receive the Website's credit card revenue deposits from Plug'nPay continues to incur costs and fees associated with the administration of the Website.

47.    Without the Website's credit card revenue deposits to offset the continuing costs and fees imposed on Plaintiff's bank account, Plaintiff's bank account presently maintains a negative balance, causing Plaintiff to incur associated bank penalty charges and fees as well as a severe degradation of Plaintiff's reputation and long-standing business relationship with the bank.

48.     Prior to filing this lawsuit, former counsel for Plaintiff issued a cease and desist letter to Defendant Claxton demanding return of the Website to Plaintiff.

49.     Plaintiff's cease and desist letter was responded to by counsel for EroticMP.com, who claims his client, Defendant EMP, purchased the Website from Claxton's shell company, Defendant Net Vista.

50.     According to EMP, Claxton falsely represented that he owned the Website, and that EMP purchased the Website from Claxton in claimed good faith.

51.     Due diligence efforts would have revealed to EMP that Claxton never had any control over the Website's credit card revenues, nor was he listed on any of the bank accounts into which the Website's credit card revenues were deposited.

52.     Prior to filing this lawsuit, counsel for Plaintiff advised counsel for EMP that Plaintiff owned the Website, that Claxton was an agent of Plaintiff and had been for the past ten years, and that Claxton never had any ownership interest in the Website. Counsel for Plaintiff also provided documentation confirming such statements, and demanded that EMP immediately transfer the Website back to Plaintiff.

53.      As of the date of the filing of this lawsuit, the Website has not been transferred back to Plaintiff, Plaintiff has no access to his intellectual property and trade secrets associated with the Website, and Plaintiff is not receiving any of the revenue generated by the Website.

54.     Based upon the facts as alleged herein and based on Defendant Claxton's and Defendant EMP's responses to counsel for Plaintiff while investigating the matters described herein, Plaintiff has reason to believe that each of the Defendants are aware

that Plaintiff owns the Website, and were aware that Plaintiff owned the Website at the time of the Defendants' actions alleged herein.

55.     Defendants' actions were negligent, malicious, intentional, oppressive, outrageous, and evidence a complete callous disregard for the rights of Plaintiff.

56.     Plaintiff reserves the right to amend this lawsuit to include further acts of Defendants that injured Plaintiff in the event such facts become known to Plaintiff after the filing of this lawsuit.

<u>**FIRST CAUSE OF ACTION**</u>
**(Breach of Contract)**
**(Against Defendant Claxton)**

57.     Plaintiff hereby incorporates all previous assertions and allegations contained in the preceding paragraphs as if fully set forth herein.

58.     Plaintiff and Claxton entered into a verbal (both oral and written) management agreement, whereby Claxton managed Plaintiff's Website in exchange for payment of an agreed upon management fee.

59.     Plaintiff performed his duties under the contract by paying Claxton the agreed upon management fee.

60.     Claxton breached the contract by (a) stealing the Website from Plaintiff, (b) usurping Plaintiff's authority and trust by changing the administrative access to the Website such that Plaintiff was "locked out" of the Website, (c) diverting all revenues from the Website from Plaintiff's account, (d) representing to EMP that Claxton owned the Website, (e) disclosing Plaintiff's trade secrets and intellectual property to EMP, and (f) selling the Website, without authorization, to EMP.

61.     The conduct of the Defendants described herein is unfair, immoral, and

unscrupulous, offends public policy, and has no countervailing benefit to consumers or competition when weighed against the harm caused by such practices.

62.      Plaintiff has been seriously damaged as a proximate result of, and by, such misconduct as alleged herein in the form of a loss of revenue, profits, intellectual property, goodwill, and all other value associated with the Website.

63.      Plaintiff is entitled to all appropriate relief.

## SECOND CAUSE OF ACTION
### (Fraud)
### (Against All Defendants)

64.      Plaintiff hereby incorporates all previous assertions and allegations contained in the preceding paragraphs as if fully set forth herein.

65.      Defendant Claxton materially misrepresented to Plaintiff that he could be entrusted with Plaintiff's highly sensitive business information of Plaintiff's and that he would act within the scope of his agreement with Plaintiff to manage the Website.

66.      Claxton misrepresented to EMP and other Defendants that he owned the Website.

67.      Claxton misrepresented to third parties that he had authority to change sensitive information associated with Plaintiff's Website, including revenue deposits from the Website handled by Plug'nPay.

68.      Claxton's misrepresentations to Plaintiff of his trustworthiness and accountability were a material and substantial factor in Plaintiff's decision to employ Claxton in a role of increased authority.

69.      Despite Claxton's representations, in or around January 2012, Claxton logged into Plaintiff's Website for an unauthorized purpose and changed the

administrative passwords, *inter alia*, thereby denying Plaintiff access to the Website.

70.     In addition, Claxton used his knowledge of Plaintiff's personal usernames and passwords to hack into several of Plaintiff's personal bank accounts, without Plaintiff's knowledge or consent.

71.     Claxton knowingly made the above representations with no intention to honor them, or, in the alternative, without care or concern as to whether he would honor them.

72.     Claxton made the above representations with the intent to induce Plaintiff to trust him and to share highly sensitive information with him.

73.     Claxton knew or should have known that these representations would induce Plaintiff to keep him in a position of trust and control with respect to the Website.

74.     Plaintiff had no knowledge that Claxton did not intend to honor the above representations or that Claxton did not have concern for whether they would be honored.

75.     Plaintiff reasonably relied on Claxton's representations concerning his trustworthiness.

76.     While employing Claxton, Plaintiff held the belief and expectation that all highly sensitive business information would be used by Claxton only as necessary to perform his management duties of the Website.

77.     Each of the other Defendants, as co-conspirators of Claxton in the misappropriation of Plaintiff's Website, acted as agents of and for Claxton, and are therefore liable to Plaintiff for fraud.

78.     Plaintiff has been damaged as a proximate result of, and by, such misconduct as alleged herein in the form of a total loss of the Website's revenues, and all

other value associated with the Website, including but not limited to, substantial loss of trade secrets, intellectual property and goodwill.

79.    Defendants' actions were malicious, intentional, oppressive, outrageous, and evidence a complete and callous disregard for the rights of Plaintiff.

80.    Plaintiff has no adequate remedy at law.

81.    Plaintiff is entitled to all appropriate relief.

### THIRD CAUSE OF ACTION
**(Negligence)**
**(Against All Defendants)**

82.    Plaintiff hereby incorporates all previous assertions and allegations contained in the preceding paragraphs as if fully set forth herein.

83.    Defendant Claxton had a duty to act as a reasonable agent of Plaintiff in managing Plaintiff's Website.

84.    Each of the remaining Defendants had a duty to act as reasonable persons with respect to determining ownership of the Website during the procurement of Plaintiff's Website.

85.    Defendant Claxton breached his duty to Plaintiff by representing to others that he, and not Plaintiff, owned the Website.

86.    The remaining Defendants breached their duty to Plaintiff by failing to acknowledge or using reasonable care to discover that Plaintiff, and not Claxton, owns the Website.

87.    Each of the Defendants further breached their duties of reasonable care to Plaintiff by failing to return the Website to Plaintiff after Plaintiff's counsel had notified

the Defendants that Plaintiff owns the Website and had provided documentation supporting Plaintiff's ownership of the Website.

88.     Plaintiff has been damaged as a proximate result of, and by, such misconduct as alleged herein in the form of a total loss of the Website's revenues, and all other value associated with the Website business, including but not limited to substantial loss of Plaintiff's trade secrets, intellectual property and goodwill.

89.     Defendants' actions were negligent, oppressive, outrageous, and evidence a complete callous disregard for the rights of Plaintiff.

90.     Plaintiff has no adequate remedy at law.

91.     Plaintiff is entitled to all appropriate relief.

**FOURTH CAUSE OF ACTION**
**(Conversion)**
**(Against All Defendants)**

92.     Each of the foregoing allegations is incorporated by reference as though fully set forth at length herein.

93.     Defendants knowingly and intentionally exerted complete and total unauthorized control over Plaintiff's Website business.

94.     Defendants knowingly and intentionally exerted unauthorized control over Plaintiff's intellectual property assets and trade secrets by seizing control of the Website and thereby denying access to Plaintiff.

95.     The foregoing acts of Defendants constitute common-law conversion.

96.     The aforesaid acts of Defendants were committed willfully, knowingly, maliciously, and in conscious disregard of Plaintiff's rights.

97.     The aforesaid conduct of Defendants has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Plaintiff's property and business.

98.     The aforesaid conduct of defendants has caused Plaintiff to sustain monetary damage, loss, and injury in an amount to be determined at the time of trial.

99.     Plaintiff has no adequate remedy at law.

100.    Plaintiff is entitled to all appropriate relief.

**FIFTH CAUSE OF ACTION**
**(Tortious Interference with Business Expectancy)**
**(Against All Defendants)**

101.    Each of the foregoing allegations is incorporated by reference as though fully set forth at length herein.

102.    Prior to Defendants' actions of misappropriating Plaintiff's Website, Plaintiff derived revenues and profits of approximately $250,000.00 per year.

103.    Plaintiff relied on the revenues and profits from the Website as his primary source of income, and Plaintiff had a reasonable business expectancy that these revenues and profits would continue in the future.

104.    Defendants knew of Plaintiff's business expectancy.

105.    Defendants intentionally interfered with Plaintiff's business expectancy to terminate that expectancy by changing the administration and ownership information of Plaintiff's Website and associated intellectual property to be associated with Defendants.

106.    Defendants acted intentionally, without justification or excuse, and with malice.

107.    Defendants' conduct was injurious and transgressive of generally accepted standards of common morality of law.

108.    Plaintiff lost prospective economic relationships as a direct and proximate result of Defendants' malicious interference.

109.    Plaintiff has suffered losses in the ownership and control of the Website and associated intellectual property, including but not limited to a complete loss of control of the Website business and its revenue and profits.

110.    Unless and until Defendants return Plaintiff's Website and other associated intellectual property to Plaintiff, Plaintiff will continue to suffer such losses.

111.    Plaintiff has no adequate remedy at law.

112.    Plaintiff is entitled to all appropriate relief.

**SIXTH CAUSE OF ACTION**
**(Conspiracy to Injure in Reputation, Trade, Business, or Profession)**
**(Virginia Code § 18.2-499)**
**(Against All Defendants)**

113.    Each of the foregoing allegations is incorporated by reference as though fully set forth at length herein.

114.    Defendants associated, agreed and acted in concert together for the purpose of willfully, tortiously, and maliciously injuring Plaintiff by stealing and converting the Website from him in violation of Va. Code § 18.2-499(a).

115.    Defendants further attempted to procure the participation, cooperation, agreement or other assistance of other persons to enter into association, agreement or concert with them to injure Plaintiff in violation of Va. Code § 18.2-499(b).

116.    Defendants' conduct has caused serious damage to Plaintiff in that Plaintiff has suffered losses in the ownership and control of the Website and associated

intellectual property, including but not limited to a complete loss of control of the Website business and its revenue and profits.

117.   Defendants' conduct has also caused a severe degradation in Plaintiff's reputation and long-standing business relationship with his bank, which may soon result in the bank closing Plaintiff's merchant account against Plaintiff's desire.

118.   Defendants' actions were malicious, intentional, oppressive, outrageous, and evidence a complete callous disregard for the rights of Plaintiff.

119.   Unless and until Defendants return Plaintiff's Website and other associated intellectual property to Plaintiff, Plaintiff will continue to suffer such losses.

120.   Pursuant Va. Code § 18.2-500, Plaintiff is entitled to treble damages and the costs of bringing this suit, including attorneys' fees.

121.   Plaintiff has no adequate remedy at law.

122.   Plaintiff is entitled to all appropriate relief.

### SEVENTH CLAIM FOR RELIEF
**(Computer Fraud and Abuse Act Violation, 18 U.S.C. § 1030 *et seq*.)**
**(Against All Defendants)**

123.   Each of the foregoing allegations is incorporated by reference as though fully set forth at length herein.

124.   Defendants violated the Federal Computer Fraud and Abuse Act, 18 U.S.C. §1030 *et seq*. by accessing Plaintiff's Website, by underestimating the Website business, and by changing the Website's administrative access without authorization, which resulted in denying Plaintiff access to his Website and all intellectual property and trade secrets associated with the Website and the business as a whole.

125.    Defendants also violated the Federal Computer Fraud and Abuse Act by accessing without authorization Plaintiff's personal and business bank accounts, without authorization and in violation of each accounts' policies and procedures, and obtaining, *inter alia*, Plaintiff's private banking information and trade secrets.

126.    The actions of Defendants amount to, at least, impersonation of Plaintiff, misappropriation, conversion, trademark infringement and unfair business practices.

127.    Defendants' actions were malicious, intentional, oppressive, outrageous, and evidence a complete callous disregard for the rights of Plaintiff.

128.    Unless and until Defendants return Plaintiff's Website and other associated intellectual property to Plaintiff, Plaintiff will continue to suffer such losses.

129.    Plaintiff has no adequate remedy at law.

130.    Plaintiff is entitled to all appropriate relief.

<u>**EIGHTH CLAIM FOR RELIEF**</u>
**(Electronic Communications Privacy Act Violation, 18 U.S.C. § 2511)**
**(Against All Defendants)**

131.    Each of the foregoing allegations is incorporated by reference as though fully set forth at length herein.

132.    Defendants violated the Electronic Communications Privacy Act, 18 U.S.C. § 2511, by accessing Plaintiff's Website administration and Plaintiff's personal and business bank accounts without authorization and in violation of each account's policies and procedures, which prohibit such unauthorized access and unlawful actions, such as for purposes of impersonation, misappropriation, conversion, trademark infringement and unfair business practices, *inter alia*.

133.    By such acts, Defendants intercepted and stored wire communications intended to be communicated only between Plaintiff and the third-party account providers, without knowledge or authorization from Plaintiff or the third parties.

134.    Defendants' actions were malicious, intentional, oppressive, outrageous, and evidence a complete callous disregard for the rights of Plaintiff.

135.    Unless and until Defendants return Plaintiff's Website and other associated intellectual property to Plaintiff, Plaintiff will continue to suffer such losses.

136.    Plaintiff has no adequate remedy at law.

137.    Plaintiff is entitled to all appropriate relief.

### NINTH CAUSE OF ACTION
**(Anti-Cybersquatting Consumer Protection Act Violation, 15 U.S.C. § 1125 *et. seq.*)**
**(Against All Defendants)**

138.    Each of the foregoing allegations is incorporated by reference as though fully set forth at length herein.

139.    Defendants registered and are using Plaintiff's <bigdoggie.net> domain name and trademark with bad faith intent to profit from the goodwill of Plaintiff's mark.

140.    Through Defendants' acts of converting Plaintiff's <bigdoggie.net> domain name and Website business, Defendants have registered, with bad faith intent to profit from, the identical mark that Plaintiff has used to brand its goods and services in commerce since the year 2000.

141.    Through their acts described herein, Defendants are intentionally, knowingly and willfully diverting consumers to the <bigdoggie.net> domain name, which is now registered and operated by Defendants, thereby harming the goodwill associated with the ownership and rights of Plaintiff in its trademark for commercial gain

and with the intent to tarnish the trademark by creating a likelihood of confusion as to source, sponsorship, affiliation and endorsement of the Website.

142.    Defendants' unlawful acts as set forth above constitute violations of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

143.    Defendants' actions complained of herein have caused, are causing, and will continue to cause irreparable harm, damage, and injury to Plaintiff.

144.    Defendants' actions have resulted in a loss of revenue and profits from the Website to Plaintiff, *inter alia*, and will continue to result in a loss of revenue and profits to Plaintiff, have damaged Plaintiff, and will continue to damage Plaintiff, and have created profits for Defendants and will continue to create profits for Defendants.

145.    Plaintiff has no adequate remedy at law.

146.    Plaintiff is entitled to all appropriate relief.

## TENTH CAUSE OF ACTION
### (Passing Off)
### (Against All Defendants)

147.    Each of the foregoing allegations is incorporated by reference as though fully set forth at length herein.

148.    Defendants' acts, as set forth herein, are likely to cause consumer confusion as to the origin, sponsorship or approval of Defendants' services and constitute passing off in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under the common law of the Commonwealth of Virginia and every other state in which Defendants do business.

149.    Defendants' actions complained of herein have caused, are causing, and will continue to cause irreparable harm, damage, and injury to Plaintiff.

150.    Defendants' actions have resulted in a loss of revenue and profits by Plaintiff and will continue to result in a loss of revenue and profits by Plaintiff, have damaged Plaintiff, and will continue to damage Plaintiff, and have created profits for Defendants and will continue to create profits for Defendants.

151.    Plaintiff has no adequate remedy at law.

152.    Plaintiff is entitled to all appropriate relief.

## ELEVENTH CAUSE OF ACTION
### (Reverse Passing Off)
### (Against All Defendants)

153.    Each of the foregoing allegations is incorporated by reference as though fully set forth at length herein.

154.    As a result of Defendants' misappropriation of Plaintiff's Website, Defendants have associated the Website with Defendants' business and not Plaintiff's.

155.    Defendants' acts, as set forth herein, are likely to cause consumer confusion as to the origin, sponsorship or approval of Defendants' services and constitute passing off in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under the common law of the Commonwealth of Virginia and every other state in which Defendants do business.

156.    Defendants' actions complained of herein have caused, are causing, and will continue to cause irreparable harm, damage, and injury to Plaintiff.

157.    Defendants' actions have resulted in a loss of revenue and profits by Plaintiff and will continue to result in a loss of revenue and profits by Plaintiff, have damaged Plaintiff, and will continue to damage Plaintiff, and have created profits for Defendants and will continue to create profits for Defendants.

158.    Plaintiff has no adequate remedy at law.

159.    Plaintiff is entitled to all appropriate relief.

## TWELFTH CAUSE OF ACTION
### (Trademark Infringement)
### (Against All Defendants)

160.    Each of the foregoing allegations is incorporated by reference as though fully set forth at length herein.

161.    Defendants have knowingly and willfully infringed Plaintiff's <bigdoggie.net> trademark by the unauthorized use of Plaintiff's domain name and Website.

162.    Defendants' acts have caused and are likely to continue to cause confusion or mistake by consumers with respect to Defendants' affiliation, connection or association with Plaintiff and with Plaintiff's Website and services.

163.    Defendants' activities violate Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. § 1114 and §1125(a), and are likely to cause consumer confusion as to the origin, sponsorship or approval of Defendants' services.

164.    Defendants' wrongful use of Plaintiff's domain name and Website's business name usurps the reputation and goodwill associated with Plaintiff's mark and constitutes unfair competition.

165.    As a result, the actions of Defendants complained of herein have caused, are causing, and, unless enjoined by the Court, will continue to cause irreparable harm, damage and injury to Plaintiff.

166.    The actions of Defendants complained of herein have resulted in profits to Defendants to which Plaintiff is rightfully entitled.

167.   Plaintiff has no adequate remedy at law.

168.   Plaintiff is entitled to all appropriate relief.

## THIRTEENTH CAUSE OF ACTION
### (Common Law Trademark Infringement)
### (Against All Defendants)

169.   Each of the foregoing allegations is incorporated by reference as though fully set forth at length herein.

170.   Defendant's acts, as set forth herein, constitute trademark infringement under the common law of the Commonwealth of Virginia and every other state in which Defendants do business.

171.   By reason of Defendants' activities complained of herein, Plaintiff has been and is being irreparably damaged by such acts, resulting in profits to Defendants to which Plaintiff is entitled.

172.   Plaintiff has no adequate remedy at law.

173.   Plaintiff is entitled to all appropriate relief.

## FOURTEENTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets in Violation of Va. Code Ann. § 59.1-336 et. seq.)
### (Against All Defendants)

174.   Each of the foregoing allegations is incorporated by reference as though fully set forth at length herein.

175.   By accessing Plaintiff's Website administration and personal and business bank accounts, *inter alia*, without authorization, and sharing the information obtained among and between each other Defendant, Defendants have obtained and misappropriated sensitive, highly protected and confidential trade secret information from Plaintiff.

176.     The acts of Defendants as alleged herein constitute the misappropriation of trade secrets under the laws of the Commonwealth of Virginia and all other states in which defendants do business, which has caused, and will continue to cause, irreparable injury to Plaintiff unless enjoined by this Court.

177.     Plaintiff has no adequate remedy at law.

178.     Plaintiff is entitled to all appropriate relief.

## FIFTEENTH CAUSE OF ACTION
### (Unjust Enrichment)
### (Against All Defendants)

179.     Each of the foregoing allegations is incorporated by reference as though fully set forth at length herein.

180.     As a result of Defendants' intentional acts as described herein, including but not limited to the misappropriation of Plaintiff's trade secrets and diverting and receiving the Website's revenues and all other value associated with and derived from the Website, Defendants have been and are being unjustly enriched and have and are benefiting at Plaintiff's expense.

181.     Defendants' actions complained of herein have caused, are causing, and will continue to cause irreparable harm, damage, and injury to Plaintiff.

182.     Defendants' actions have resulted in a loss of revenue and profits by Plaintiff and will continue to result in a loss of revenue and profits by Plaintiff, have damaged Plaintiff, and will continue to damage Plaintiff, and have created profits for Defendants and will continue to create profits for Defendants.

183.     The acts of Defendants as alleged herein constitute the misappropriation of trade secrets under the laws of the Commonwealth of Virginia and all other states in

which defendants do business, which has caused, and will continue to cause, irreparable

injury to Plaintiff unless enjoined by this Court.

184.    Plaintiff has no adequate remedy at law.

185.    Plaintiff is entitled to all appropriate relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court render Judgment against

Defendants, jointly and severally, and in Plaintiff's favor and grant the following relief:

A.  A preliminary injunction immediately imposing a constructive trust on all of
the income, revenue, and profit derived from the Website;

B.  A preliminary injunction and permanent injunction requiring Defendants and
their partners, agents, employees, assignees, trustees, and all persons acting in
concert or participating with Defendants to (a) immediately transfer
ownership of the <bigdoggie.net> domain name and Website back to Plaintiff;
and (b) refrain from committing further acts of the nature alleged herein;

C.  An Order awarding compensatory damages in the amount of $10,000,000 ;

D.  An Order awarding statutory damages under the Anti-Cybersquatting
Consumer Protection Act;

E.  An Order awarding treble damages pursuant Va. Code § 18.2-500;

F.  An Order awarding exemplary and punitive damages in the amount of
$10,000,000;

G.  An Order awarding costs of this suit, including attorneys' fees pursuant to the
Lanham Act, Va. Code § 18.2-500 and otherwise; and

H.  All other relief as the Court deems just and proper.

**JURY DEMAND**

TRIAL BY JURY IS DEMANDED ON ALL ISSUES SO TRIABLE.

Dated:  May 3, 2012                    Respectfully submitted,

                                        Steven E. Lipson, by counsel

                                        DOZIER INTERNET LAW, P.C.

                                        By: s/ John W. Dozier, Jr., Esquire
                                            Virginia Bar Number: 20559
                                            Attorney for Plaintiff
                                            DOZIER INTERNET LAW, P.C.
                                            11520 Nuckols Road, Suite 101
                                            Glen Allen, VA 23059
                                            Telephone:  (804) 346-9770
                                            Facsimile:  (804) 346-0800
                                            Email:  jwd@cybertriallawyer.com